[Civ. No. 11054. Second Appellate District, Division One.—January 15, 1937.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Plaintiff and Appellant, v. JOHN V. MOORE, Defendant and Appellant.

Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Plaintiff and Appellant.

W. Ward Johnson for Defendant and Appellant.

BISHOP, J., *pro tem.*—Relying upon a ninety-nine year lease, to which plaintiff's predecessor in interest and one of defendant's predecessors in obligation were the original parties, plaintiff sought recovery under five causes of action. The trial court denied plaintiff any recovery on the first three

causes which were, respectively, for six months rent, for taxes which had been allowed to go delinquent, and for a fire insurance premium expended by plaintiff when defendant refused to renew a policy. From this part of the judgment, plaintiff appeals. Both plaintiff and defendant appeal from that part of the judgment which awarded plaintiff the sum of $1275 on the fourth cause of action, wherein plaintiff sought to have a decree that the term of the lease providing for repairs be specifically performed. Attorney fees, the basis of the fifth cause of action, were allowed, causing the defendant a further appeal.

We have reached the conclusion that the plaintiff should have had judgment on its first three causes of action. In opposition to this conclusion and in support of the present judgment, two arguments are advanced by the defendant, each depending upon the fact that the defendant had renounced the lease, its benefits and its obligations and moved out. One argument is that the defendant was not a party to the lease, but only an assignee, freed from the obligations of the lease when he chose to give up its benefits. His second argument is, in effect, that by the terms of the lease itself, its obligations ceased because for a period of ten days he refused to recognize them. As we have indicated, we find neither of these arguments, nor the judgment they are offered to support, to have valid foundations.

From the beginning of this litigation the controversy has centered around the law rather than the facts. The defendant was not the original lessee, but no one seems concerned with the chain that attached him to the lease. Everybody seems agreed, and we accept it as the fact, that there was a continuous connection between the original lessee and the link which we find fastens the defendant, the assignment to him. That assignment, bearing the signature both of the defendant, assignee, and the assignor, concludes with these paragraphs: "It being understood that said Assignee, John V. Moore, is to accept, assume and agree to perform all of the terms, conditions and limitations contained in said lease.

"The undersigned, John V. Moore, hereby accepts, assumes and agrees to perform all of the terms, conditions and limitations contained in the aforementioned lease to be kept and performed by said lessee." From the date of this assignment, September 18, 1924, until some time in April, 1935,

the defendant was in possession of the premises covered by the lease, and, so far as appears, paid his rent and kept all the covenants. In April he quit the premises, endeavoring to accomplish a surrender of them to the plaintiff, who meanwhile had succeeded to the position of lessor. Since his departure from the premises the defendant has declined to pay rent, refused to pay an instalment of taxes which became due, and neglected to renew a fire insurance policy, taking the position that while these obligations were his while he remained in possession, because he enjoyed privity of estate, because there was no privity of contract the obligations of the lease did not follow him off the premises.

We are of the opinion that the defendant was bound to the plaintiff by the lease agreement, because there was privity of contract, and hence his position is untenable. A review of all the cases touching upon privity of estate and of contract would be interesting, but would result in our coming back to two, which seem to us to govern this case and to stand unquestioned: *Chase* v. *Oehlke,* (1919) 43 Cal. App. 435 [185 Pac. 425], and *Lopizich* v. *Salter,* (1920) 45 Cal. App. 466 [187 Pac. 1075]. In our case, as in those, we have not a naked assignment creating privity of estate only, ceasing with cessation of possession, but one clothed with the express assumption by the assignee of the obligations of the lessee. If, as in the two cases just cited, we regard this as a contract for the benefit of the lessor, it furnishes sufficient basis upon which plaintiff may stand. Further foundation for his position may be found in the fact that as the lease itself declares that an assignment shall be void unless the assignee agrees, in writing, to carry its burdens, the agreement of the defendant, in harmony with the requirement of the lease, may be interpreted as a contract directly with the lessor. In *Realty & Rebuilding Co.* v. *Rea,* (1920) 184 Cal. 565, 570 [194 Pac. 1024], it was held that no contractual liability arose from a naked assignment, but that when the assignee, exercising an option for renewal contained in the lease, wrote ''This notice of election and intention is given under and upon and subject to all the terms and conditions in said lease contained,'' there was ''definitely created and established a contractual relation between the lessor and the assignee and the covenants of the lease were made the measure of the rights and liabilities of the parties for the extended three-year period.'' So we

find here. In order that as assignee the defendant might have the benefits of the lease he had to agree to assume its burdens. When he did so, he agreed with the lessor, who imposed the condition, that he would keep the covenants of the lease, and he may be held to his bargain.

■ The other, and more earnestly defended position, is that by the terms of the lease itself, defendant's failure to pay rent releases him from the necessity of doing so. This somewhat unexpected term of a lease contract is found, if we could accept the defendant's construction, in this provision of the lease: "And It Is Further Covenanted and Agreed that in case the said Lessee fails, neglects or refuses to pay said rent of said premises at any time during the continuance of this lease, for a period of ten days after any payment becomes due according to the terms hereof, or any part thereof, then and in that case this lease shall thereupon become and be null and void, and all rights of said Lessee hereunder shall be forfeited and ended, as hereinafter provided." Later in the lease we find the lessor given the option, after ten days' notice in writing to the lessee, to declare the lease canceled and the term ended, for failure to pay rent, taxes or for other defaults.

We are of the opinion that an option is not given the lessee to drop the burdens of his ninety-nine year lease whenever he desires to give up its advantages, as would be the case if we interpreted the language quoted as providing for an automatic termination of the lease if the rent was not paid for ten days. This is not the first instrument employing such terms to be the subject of judicial construction and, so far as we are aware, the conclusion has invariably been reached that the option rested with the lessor, whether the failure to pay rent did or did not void the lease; the provision was inserted for the benefit of the lessor; it does not constitute an option for the benefit of the lessee.

In *Harron, Rickard & McCone* v. *Cutting,* (1912) 19 Cal. App. 780 [127 Pac. 827], the court had under consideration a lease of personal property for a period of seven months. The decision is best understood by a brief quotation (p. 782): "Defendant also asserts that it was optional with him to terminate the agreement by failing to pay any monthly instalment; that upon his failure to pay the second instalment the contract was canceled and of no further effect. It is true

that one of the clauses of the lease provides that upon the failure of the lessee strictly to keep and perform any of the covenants of the lease the 'instrument shall be deemed canceled and of no further effect as against the lessor'; that 'all rights and interests of the lessee in and to said property shall cease', and that 'the lessor shall be entitled to take into its possession all of said property'. But this provision was inserted in the lease contract for the benefit of the lessor; and, according to all decisions on the subject, the contract is void only as to the lessee at the election of the lessor."

One of the decisions relied upon in the case to which reference has just been made, was *Central Oil Co.* v. *Southern Refining Co.*, (1908) 154 Cal. 165 [97 Pac. 177]. Again a quotation best serves our purpose: "Upon appeal appellant's first and principal contention is that by force of the terms of the contract itself, when defendant violated it, the agreement became 'void and of no effect'; that this provision means that the violation terminated the contract and that consequently plaintiff had no right of recovery under it. Clearly appellant misconstrues the force of the language upon which it relies. That language means that by a violation of the terms of the contract the rights of the party violating it cease, and as to that party and to that extent, the agreement becomes void and of no effect. It would be an extraordinarily unreasonable construction to give the language the meaning for which appellant contends. It would work the destruction of the contract itself and leave this solemn writing as an expression of the mere whim of the parties, for 'a promise which is made conditional upon the will of the promisor is generally of no value, for one who promises to do a thing only if it pleases him to do it, is not bound to perform it at all.' " (See, further, *Farmers & Merchants Nat. Bank* v. *Bailie*, (1934) 138 Cal. App. 143 [32 Pac. (2d) 157]; *Title Guarantee & Trust Co.* v. *Stahler*, (1936) 15 Cal. App. (2d) 239 [59 Pac. (2d) 515].)

The rule that the provision that a default shall make the contract null and void is not to be understood as a favor to the defaulting party, is not the rule of this state alone. In *Brown* v. *Cairns*, (1901) 63 Kan. 584 [66 Pac. 639], the court stated (p. 640): "The defendants in error could not, by a failure to pay the rent, bring the lease to an end. The provision that the agreement should terminate on the failure of

the lessees to perform those conditions of the lease which were obligatory to be carried out on their part is a covenant in favor of the lessors exclusively, and does not make the lease void except at their option. . . . The law is well settled on this question.'' (Citing cases.) In *English* v. *Yates,* (1903) 205 Pa. 106 [54 Atl. 503], we read: ''It was decided in *Wills* v. *Manufacturers' Natural Gas Co.,* 130 Pa. 222 [18 Atl. 721, 5 L. R. A. 603], and *Westmoreland etc. Natural Gas Co.* v. *De Witt,* 130 Pa. 235 [18 Atl. 724, 5 L. R. A. 731], that a clause in a lease that it shall be null and void on failure of the lessee to pay rent or keep other covenants is not self-operating so as to make the lease void *ipso facto* by the default, but, being a provision for the benefit of the lessor, may be enforced or waived at his option.'' Lastly, we quote from *68 Beacon Street, Inc.,* v. *Sohier,* (1935) 289 Mass. 354 [194 N. E. 303], at 305: ''The defendant contends that the lease was terminated as a result of his assignment to Burr by virtue of the ninth clause in the lease which provides that the lease 'shall cease, determine and become null and void', upon the . . . attempt by the lessee to sell, pledge, or dispose of the lease, or his shares of stock. It is plain that this proviso, following as it does the grant of a definite term, is not a conditional limitation. Similar provisions in leases are not uncommon especially when coupled with a right of re-entry. They have uniformly been construed as having been placed in the lease for the benefit of the lessor. It is wholly at his election whether he shall avail himself of the breach as a cause of the forfeiture or not.''

We conclude, therefore, that the defendant is bound by the terms of the lease and that its terms have not released their grasp upon him because, for a period, he has declined to pay the rent required.

█ Among the provisions of the lease which the defendant assumed was one by which he agreed ''as often as said buildings and improvements shall be destroyed or damaged by fire or otherwise, the Lessee shall, at his own cost and expense, and without expense to said Lessor, his heirs and assigns, rebuild and repair the same upon the same general plans as before said fire casualty''. Shortly before the defendant ceased paying rent, the brick building on the premises was badly damaged by an earthquake. The plaintiff sought a judgment decreeing the specific performance of the agreement to repair.

The judgment we have, one for damages only, we do not interpret as an adjudication that the facts presented to the trial court do not warrant the order prayed for, because such an order would not be expected in view of the trial court's conclusion that the lease was no longer operative. Having concluded that the lease continues in effect, we are not prepared to say that this may not be a case where specific performance is the proper remedy. It would seem to be authorized by section 3384 of our Civil Code. Probably that section, ''Except as otherwise provided in this article, the specific performance of an obligation may be compelled'' is to be understood with the proviso, ''provided it is a case where at common law it would be compelled''. Some such qualification is needed to reconcile the cases with the section. It may be, therefore, that the nature of the repairs required in this case will lead the trial court to the conclusion that a court should not undertake the task of ordering them done, as was the case in *Crane* v. *Roach,* (1916) 29 Cal. App. 584 [156 Pac. 375], or that for other reasons the equitable relief sought should not be furnished. If this conclusion is reached, then damages should be allowed which will compensate the plaintiff for the loss of security which the breach of the covenant to repair occasions. That is to say, we hold that although a cause of action for equitable relief may not be established, damages may properly be awarded. We follow *Pascoe* v. *Morrison,* (1933) 219 Cal. 54 [25 Pac. (2d) 9], rather than *Morgan* v. *Dibble,* (1919) 43 Cal. App. 116 [184 Pac. 704], and *Hupp* v. *Lawler,* (1930) 106 Cal. App. 121 [288 Pac. 801].

There remains for review that portion of the judgment which allows the plaintiff the sum of $1380 as attorney fees. We are of the opinion that the defendant has good ground for his objection to this provision of the judgment, not only because we question the reasonableness of an award in that amount for obtaining a judgment of $1275, but more because we are of the opinion that no attorney fees at all should have been allowed.

It is well settled that a party is not entitled to attorney fees as a part of his judgment, except where authorized either by special statute or contract. (*Los Angeles Trust & Sav. Bank* v. *Ward,* (1925) 197 Cal. 103 [239 Pac. 847], and cases cited.) There is, admittedly, no statutory support for the award in the case before us. Two provisions of the lease

agreement are specifically mentioned in the findings with the idea, we presume, that they support the award of attorney fees. One finding proceeds: "It is true that said leasehold agreement provides that in the event the lessor, his heirs or assigns, shall without fault on their part be made party to litigation concerning said lease brought by or against the lessee then said lessee shall pay all costs and attorney's fees incurred by said lessor, his heirs or assigns, on account of such litigation. Both parties now insist that this provision is inapplicable to the present situation, and we approve their conclusion.

The plaintiff offers in support of the judgment the further finding: "It is true that said leasehold agreement provides that the lessee or his assigns shall save the lessor, his heirs and assigns, free from any loss, damage or expense arising out of the failure of said lessee, his heirs or assigns, to comply with the requirements and provisions of said lease." We do not find the answer free from doubt, but we have determined that this provision of the lease does not support the award of attorney fees in this action. Elsewhere in the lease attorney fees are expressly mentioned; here they are not. The lease was prepared by the lessor, and any doubts arising in its interpretation are to be resolved against him. (Sec. 1654, Civ. Code.)

We find further comfort for our position in the absence of authorities. Because plaintiff's briefs on all other subjects have revealed preparation and presentation much above the average, we feel we have a right to infer that his failure to support his position on this matter with authorities is proof that there are none. In none of the cases cited was attorney fees allowed, as here, for bringing the action. In *Henne* v. *Summers*, (1914) 23 Cal. App. 763 [139 Pac. 907], a suit on a bond given to secure performance of certain obligations of the lease, the fees allowed, as an inspection of the original file of this court shows, were for legal services rendered prior to the bringing of the action, respecting new leases and other matters. In all other cases cited, the attorney fees for which allowance was made had been necessitated by actions which had been brought against the plaintiff. We know of no case where a lessor was held entitled to attorney fees in an action brought by him against the lessee, where reliance was placed

on any such general language in the lease as we have under consideration.

For the reasons given, the judgment is reversed; plaintiff to have its costs on appeal, so far as they may be attributed to the first four causes of action; defendant to have his costs on appeal made necessary by the judgment on the fifth cause of action.

Houser, P. J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 15, 1937.