[Civ. No. 6175.   Third Appellate District.—June 24, 1939.]

THE FIRST NATIONAL BANK OF OROVILLE (a Corporation), Respondent, v. CHESTER ALDRIDGE et al., Appellants.

Chester Aldridge and John Gray, *in pro per.*, for Appellants.

Carleton Gray for Respondent.

PAULSEN, J., *pro tem.*—By this action respondent, a national bank, recovered judgment for the possession of a

tract of land in Butte County, together with $450 for rentals due. Defendants have appealed on the judgment roll and a bill of exceptions.

■ Appellants attack many of the findings but except in a single instance, which will be noted later, they have failed to present all the evidence on these points and, upon familiar principles, we must consider such findings sufficiently supported.

The essential facts as shown by the findings, are these: During the year 1934, one E. E. Meyers became indebted to respondent bank. On January 20, 1935, Alice O'Neal, the owner of the property involved, leased the same to Meyers for the term of 25 years, for the purpose of enabling him to process and sell sand and gravel therefrom. For convenience this will be referred to as the Meyers lease. On February 5, 1935, Meyers, who had been unable to settle his affairs with the bank, assigned this lease to it as partial security for his indebtedness. The assignment was attached to a copy of the lease, and both were recorded in the office of the county recorder of Butte County. During the year 1936, while Meyers was still indebted to the bank for the money loaned to him in 1934, he and his wife delivered to the bank a quitclaim deed to the property covered by the lease in partial satisfaction of the indebtedness. This deed was recorded May 19, 1936. On January 20, 1937, respondent sublet the property of R. S. Brandonier for the term of five years. This lease, which will be referred to herein as the Brandonier lease, provided for rental payments based upon the yardage of materials sold, but required, after July 1, 1937, a minimum monthly rental of $75. Time was of the essence of the lease. A copy of the Meyers lease was attached to this instrument. Brandonier entered into possession and paid the rent until October 1, 1937. By an instrument dated December 23, 1937, he assigned to appellants all his interest and rights under his lease from respondent. This assignment was signed and accepted by appellants and contained the following provisions: "Second parties (appellants) further agree to assume future obligation of the original lessee and first party herein (Brandonier) in payment of future rentals to the lessor, Alice O'Neal, or other party entitled thereto."

During the latter part of December, 1937, or the first part of January, 1938, appellants, who had entered into posses-

sion under their assignment of the Brandonier lease, called at the home of Alice O'Neal and, after informing her that the Meyers lease was void, induced her to make a new lease of the premises to them. She later sought to rescind this action but appellants have at all times maintained that it is in full force and effect; that they hold the property under it and not by virtue of their assignment from Brandonier.

The court further found that respondent had at all times fully complied with its obligations under the Meyers lease, and that said lease was in full force and effect; that it had taken all the steps required of it before commencing this action.

All but two of appellants' contentions are predicated directly or indirectly upon the proposition that because respondent is a national bank, its acts in connection with the real property herein involved were *ultra vires* and therefore void. In view of the conclusions we have reached it is unnecessary to discuss many of appellants' arguments in detail or to decide whether or not respondent's acts, or any of them, were, in fact, *ultra vires.*

Numerous decisions have been called to our attention which hold that the *ultra vires* acts of a corporation are void and that where the corporation relies upon such acts the defense of *ultra vires* is available to any person sued thereon. However this principle has not been applied uniformly and contrary conclusions have been reached in many instances. Some divergence of opinion exists because of differences of state laws and even in the federal courts in cases that involved federal questions alone, the results have varied, depending upon the statute under consideration. By a process of evolution different rules appear to have developed under different statutes. (See *Baron* v. *McKinnon,* 196 Fed. 933.)

The power of a national bank to deal in real estate is prescribed and limited by section 5137 of the Revised Statutes of the United States, and this section is the measure of their power. (*California Bank* v. *Kennedy,* 167 U. S. 362 [17 Sup. Ct. 831, 42 L. Ed. 198].) Consequently, in the interpretation of that section the decisions of the federal courts are controlling. Whatever the rules may be in state jurisdictions, or when the bank seeks to raise the defense of *ultra vires,* or whatever the effect of an *ultra vires* act may be when the case arises under some other statute, the de-

cisions of the Supreme Court of the United States, when dealing with section 5137, *supra*, are uniform and consistent in holding that violations of that section by a national bank render the transactions voidable and not void; that the defense of *ultra vires* is not open to persons who enter into real estate transactions with such banks, but that the United States alone can call the act in question on that ground. In *Kerfoot* v. *Farmers & Merchants' Bank*, 218 U. S. 281 [31 Sup. Ct. 14, 54 L. Ed. 1042], the court, after again recognizing and referring to this rule, states: "While recognizing the authority of the Government to which the corporation is amendable, it has the salutary effect of assuring the security of titles and of avoiding the injurious consequences which would otherwise result." (See, also, *Schuyler Nat. Bank* v. *Gadsden*, 191 U. S. 451 [24 Sup. Ct. 129, 48 L. Ed. 258]; *Thompson* v. *Saint Nicholas Nat. Bank*, 146 U. S. 240 [13 Sup. Ct. 66, 36 L. Ed. 956]; *Logan County Nat. Bank* v. *Townsend*, 139 U. S. 67 [11 Sup. Ct. 496, 35 L. Ed. 107]; *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405 [5 Sup. Ct. 213, 28 L. Ed. 733]; *National Bank* v. *Whitney*, 103 U. S. 99 [26 L. Ed. 443]; *National Bank* v. *Matthews*, 98 U. S. 621 [25 L. Ed. 188].) In *Merchants' National Bank* v. *Weston*, 34 Cal. App. 693 [168 Pac. 587], the court said: "It is first argued that the act of plaintiff in executing the lease under which defendants went into possession of the premises was *ultra vires;* that plaintiff being a national bank, it had no authority to execute the character of lease in question. We see no force in this argument. Assuming that the bank was not authorized to make the lease, it does not lie with the plaintiff to raise the point, as the United States alone can be heard on this question."

There is still another reason why appellants cannot urge the defense of *ultra vires*. The sole purpose of such a defense was to deny respondent's title. Appellants had both constructive and actual notice of respondent's claims. They knew that Brandonier was in possession claiming under respondent and paying rent to it. With full knowledge of these facts they accepted the assignment and thus gained possession for themselves. It is well settled that a lessee cannot deny his landlord's title. Brandonier could not have done so. (*Storrs* v. *Belmont Gold Min. & Mill Co.*, 24 Cal. App. (2d) 551 [76 Pac. (2d) 197]; 15 Cal. Jur. 645, 646.) Appellants, having gained possession of the premises as the

successors in interest of Brandonier, are in no better position. (*Lapique* v. *Plummer,* 51 Cal. App. 207 [196 Pac. 300].)

■ It is next contended that there was no privity of contract between respondent and appellants, and consequently that there was no liability to pay the rent due under the terms of the Brandonier lease. The point is without merit. When appellants signed the assignment from Brandonier they agreed to pay future rentals to "Alice O'Neal, or other party entitled thereto". The court found that the purported lease from Alice O'Neal to appellants was not in force; that the Meyers lease, held by respondent, was in force. Therefore, respondent was the "other party entitled" to the rentals, and as the covenant was made for its benefit, it could sue thereon. (Civ. Code, sec. 1559; *Lopizich* v. *Salter,* 45 Cal. App. 446 [187 Pac. 1075].) ■ Even in the absence of such an agreement, appellants would have been liable for rent during the period of their occupancy. The Brandonier lease contained a covenant to pay rent. This was a covenant running with the land and the naked assignment alone created a privity of estate between respondent and appellants which placed upon them the obligation to pay the rent provided for while they remained in possession of the premises. (*Treff* v. *Gulko,* 214 Cal. 591 [7 Pac. (2d) 697]; *Baker* v. *J. Maier & Zobelein Brewery,* 140 Cal. 530 [74 Pac. 22]; *Bonetti* v. *Treat,* 91 Cal. 223 [27 Pac. 612, 14 L. R. A. 151]; *Lesser* v. *Pomin,* 3 Cal. App. (2d) 117 [39 Pac. (2d) 451]; *Lopizich* v. *Salter, supra; Lutton* v. *Rau,* 37 Cal. App. 429 [173 Pac. 1111].)

■ As a part of finding VI the court found that Brandonier remained in possession until October 1, 1937, *at which time he sublet said premises to the defendants herein and put them into possession.* Appellants contend that the italicized portion of said finding is not supported by the evidence, and with this contention we agree. In this one particular the bill of exceptions purports to present all the evidence on the point. Respondent alleges that appellants had taken possession on or about October 1, 1937. This allegation was denied by the answer but appellants admitted the execution of the assignment and the taking of possession by them on December 23, 1937. The only evidence offered by either party on this point was the testimony of appellants to the effect that they *worked for Brandonier* prior

to December 23, 1937, and that of that date they took the assignment and then entered into possession for themselves. However, this does not require a reversal of the judgment. There is no conflict in the evidence on this point, and but one finding could possibly be made. Under the authority vested in this court by section 4¾ of article VI of the Constitution and by section 956a of the Code of Civil Procedure, the portion of the finding mentioned above and shown in italics is ordered stricken out, and in lieu thereof we find "that on December 23, 1937, he assigned said sublease to defendants herein, and on said day put them into possession of said premises".

■ Brandonier failed to pay the rent for the months of October, November and December of 1937, and the court included in its judgment for rentals the sum of $75 for the month of December, 1937. Appellants contend that they cannot be held liable for rent for any time prior to December 23, 1937, the time they took possession. Respondent contends that the rent for the month of December was not due until December 31, 1937, and as appellants were then in possession, they were liable therefor. The Brandonier lease provided that the first payment of rent was to be made February 15, 1937, "and on the 15th day of each and every month thereafter". It follows that rent for the period from November 15, 1937, to December 15, 1937, was due on the latter date. The next instalment of rent fell due January 15, 1938. Appellants entered into possession under their assignment December 23, 1937. By their agreement to pay rent contained in the assignment appellants agreed "to assume *future* obligation of the original lessee and first party herein (Brandonier) in payment of *future* rentals", etc. (Italics supplied.) Obviously, this cannot be construed to apply to instalments of rent that had become due prior to the assignment. Likewise, the obligation to pay rent based upon the theory of privity of estate cannot include rents that fell due on or before December 15, 1937, but does include the rent due for the month ending January 15, 1938, and which accrued after appellants entered into possession. An assignee is not personally liable for rents which accrued prior to his acquisition of the leasehold in the absence of an agreement therefor. (16 R. C. L. 852.) But he is personally liable for rents which accrue while he is in possession, even though the month or other period began before he

took possession. (*Houston* v. *Barnett*, 90 Or. 94 [175 Pac. 619]; 16 R. C. L. 851; 52 L. R. A. (N. S.) 984; 14 L. R. A. 151.) Measured by these rules, it appears that appellants were liable for the rent that accrued after December 15, 1937, but not before.

It is therefore ordered that the judgment appealed from be modified by striking therefrom the figures $450 and inserting in lieu thereof the figures $412.50, and as so modified the judgment is affirmed. Respondent to recover costs on appeal.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 24, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 21, 1939.