[Civ. No. 15315. Second Dist., Div. Two. Oct. 2, 1946.]

MACCO CONSTRUCTION COMPANY (a Corporation), Respondent, v. CHARLES FICKERT et al., Appellants.

Wm. H. Cree for Appellants.

Schell & Delamer for Respondent.

MOORE, P. J.—In reliance upon certain representations and guarantees of appellants on April 26, 1944, respondent purchased from the former a community oil and gas lease on three lots of 5 acres each in the Torrance-Redondo oil field in Los Angeles County and certain movable property situate thereon. The consideration paid was $8,000 for which appellants assigned the lease and executed a bill of sale purporting to convey the movables. Having found that such representation and guarantees were fraudulent and that respondent had promptly served notice of rescission upon discovery of such

fraud, the court awarded judgment for the purchase price of $8,000, for sums expended in work upon the lease in the sum of $3,855.15 and for $1,000 as compensation for services rendered by attorneys employed to protect respondent's interest and to maintain this action.

The primary question posed by this appeal is whether respondent was induced to make its purchase by concealments, false statements and guarantees.

The lease was dated September 1, 1921, to run for 20 years. Appellants acquired it by assignment November 23, 1938, from the original corporate lessee. One of the lots was purchased August 23, 1940, by Parker and Opal Wood, hereinafter referred to as Wood. The well on the Wood lot produced 200 barrels per month prior to January, 1941, when a fire destroyed the derrick and production ceased. The well remained as an abandoned enterprise: No operations, no repairs during the seven months preceding August 31, 1941. The rehabilitation of the well was completed some time in 1942 when production was resumed. No oil having been produced it was time for Wood to pursue appellants and induce them to accept an extension of the lease or to treat the lease as terminated. Two days later, September 2, he served appellants with notice that the lease was terminated as to his lot as of the date of its expiration. After three months none of the personal property which had been placed on the lot by appellants and their predecessors had been removed. Thereupon Wood asserted ownership of the movables and thereafter declined to recognize appellants as lessees or to accept their payments of royalties.

## THE FRAUDULENT REPRESENTATIONS.

The court found that appellants knowingly and falsely represented and warranted that the equipment and movable property on the Wood lot were free of liens and claims and that respondent on acquiring the lease would have the right to remove such movables; that respondent believed in and relied upon such representations and warranties at the time of paying its money to appellants. The court further found that on April 26, 1944, the lease had ceased to exist by reason of the lessees' default and of the exercise by lessor Wood of his right to declare the lease terminated; that the lessees were in default and respondent did not have the right to continue production or to do any work on the Wood well; that the equipment and movables were subject to the claims

of Wood and could not be removed by respondent. Each of such findings is supported by substantial evidence and thus the respondent was entitled to rescission.

A single misrepresentation of a material fact in a transaction is sufficient to support a judgment for fraud. (*Duttweiler* v. *Washburn*, 19 Cal.App.2d 701 [66 P.2d 219]; *Neff* v. *Engler*, 205 Cal. 484, 490 [271 P. 744]; *Boas* v. *Bank of America*, 51 Cal.App.2d 592, 598 [125 P.2d 620].) Common honesty requires a seller to make full disclosure as to any claims made in good faith against the property he offers to sell and not to permit his confiding purchaser to continue to believe in assertions of a merchantable title. (*Wolfe* v. *Severns*, 109 Cal.App. 476 [293 P. 156].) In the instant case it was found that appellants guaranteed the title to the leasehold and to the movables at the time of the assignment and conveyance thereof and that the consideration to respondent failed in a material respect.

### FRAUDULENT CONCEALMENT.

The court found upon uncontradicted evidence (1) that the lease was by its terms to expire on August 31, 1941, except as to *wells then* producing, and that within 90 days after such date appellants might remove their equipment; (2) that the Wood well was not producing at the expiration date; (3) that Wood had promptly served notice of such expiration; (4) that within 90 days appellants did not remove any part of the equipment or movables; (5) that after the well had been again placed on production Wood declined ever to accept proffered royalty payments. Despite their knowledge of such facts appellants not only declared the lease was in good standing and that their title to the movables was clear, but they did not disclose that the well was not on production on the date of the expiration of the lease or that Wood had notified them of his position that the lease had terminated or that he had refused to accept royalty payments. By virtue of such concealments respondent made the purchase under the belief that it was about to gain ownership of the movables with the right to continue the operation of the three wells, whereas it made the purchase of the leasehold on two lots and a lawsuit against Wood. Such a suppression of material facts concerning the lease and the chattels nullified the sale. Although a vendor may be under no obligation to speak

concerning the thing he would sell, yet if he undertakes to do so he is bound not only to speak the truth in all he says but is equally obliged to tell every material fact within his knowledge which might materially qualify such statements as he may have made. (*Rogers* v. *Warden,* 20 Cal.2d 286, 289 [125 P.2d 7]; *American Trust Co.* v. *California Western States Life Ins. Co.,* 15 Cal.2d 42, 65 [98 P.2d 497].) ■ Although a representation might be literally true, yet it is actionable if used to create an impression substantially false, and the vendor cannot escape liability by reason of the fact that the purchaser might have ascertained the whole truth by making inquiry. (*Sullivan* v. *Helbing,* 66 Cal.App. 478, 483 [226 P. 803].)

Appellants' attempt to justify their conduct by asserting that their attorney ''was of the opinion that this lease was not terminated as to the Wood lot'' is without merit. No showing was made that their counsel had knowledge of all the representations and concealments made by appellants. It is unbelievable that had he possessed such knowledge he would have entertained such opinion as that imputed to him.

From the foregoing it must follow that the judgment of rescission was a proper award unless other contentions of appellants prevail.

### MRS. FICKERT IS CHARGEABLE.

■ It was admitted by the answer of Mrs. Fickert that her husband represented and warranted that they were owners of the community lease and of the personal property situate on the Wood lot. She also admitted that such representation failed to disclose the true status of the title to the leasehold, and after she had been served with notice of rescission which declared that the two had jointly perpetrated the deceit and made the warranties of valid titles she made no reply thereto. In view of both her expressed and implied admissions and of her execution of the assignment of the lease, the finding of the trial court that her husband was her agent in making the representations and warranties with reference to the lease and the movables was not an arbitrary conclusion but was a reasonable deduction from the admissions and the other established facts. The agency of Mr. Fickert for his wife at the time of making the representations renders her equally liable with him. (*Hargrove* v. *Henderson,* 108 Cal.App. 667, 683 [292 P. 148].)

THE LEASE HAD EXPIRED AS TO THE WOOD LOT.

Appellants' inability to overcome the finding that their statements, guarantees and concealments vitiated the sale of the leasehold and of the movable property on the Wood lot does not leave them without a contention for reversal. They contend that the language of two provisions of the lease establishes their good faith and the correctness of their representations. Such provisions are as follows:

(A)

". . . Provided that at the expiration of twenty (20) years from September 1, 1921, that is to say on the 31st days of August 1941, the said right to explore and drill for oil and other hydrocarbon substances shall terminate, but the Lessee may thereafter retain and operate all wells then producing oil in paying quantities on the same terms as to royalty and other conditions as are herein specified, and maintain and use such structures and equipment as may be necessary in the operation of such wells as long as such wells shall continue to produce in paying quantities; and the Lessors hereby agree that they will not drill any well, nor cause, nor permit any well to be drilled upon any of said land surrendered by the Lessee at the termination of Lessee's right to explore and drill within three hundred and fifty (350) feet of any producing well thereafter operated by the Lessee on any of said land hereby leased. A well shall not be deemed to be producing oil or other substances in paying quantities, within the meaning of this paragraph unless such well shall yield at least an average return per month of one hundred and fifty (150) barrels of oil.

(B)

"The Lessee shall pump all producing wells with due diligence, provided, however, that if at any time, the price of oil of a gravity of 14 degrees Baumé, or of any higher gravity, at 60 degrees Fahrenheit should fall below fifty (50) cents a barrel at the wells, Lessee may cease pumping oil or drilling wells upon the demised premises for and during the time that the said price of oil shall remain below fifty (50) cents a barrel at the wells, and the cessation of such pumping or drilling during such time, shall not have the effect of terminating this lease, or any of the rights herein granted to the Lessee."

In view of such provisions appellants make three arguments

in support of their contention that Wood's notice did not effect a termination of the lease, namely: (1) The meaning of the quoted language is that at the expiration date of the term of the lease the lessee is granted the right to retain and operate all wells capable of producing oil or gas in paying quantities. (2) The notice of termination was ineffectual because of Wood's failure to serve a 60-day cautionary notice. (3) The notice served was an idle act because the other lessor signatories to the lease did not join in the notice.

No Suspension of Lease Requirements on Account of Low Market Values Unless Diligent Production Is in Progress.

■ Appellants base their first argument upon certain portions of paragraph B while ignoring other provisions of the lease. They argue that inasmuch as on August 31, 1941, the price of oil of 14 degrees Baumé was below 50 cents a barrel lessees had the right to be relieved of the duty of operating the Wood well, and that their leasehold could not be forfeited because of the fact that the well was not then producing "an average return of 150 barrels per month." It is true that the price of the oil theretofore produced by the Wood well was below 50 cents a barrel and had been for some time prior to the expiration date. Such fact, however, did not vest in appellants the right to leave the well continuously for seven months without a pump or even a derrick. By paragraph B they were obliged to "pump all producing wells with due diligence." The well was not producing 150 barrels monthly or in any amount but was in an abandoned state. Had it been a producer in paying quantities on August 31, 1941, or at some time prior thereto, they might at such time have ceased operations without the consequence of a termination of the lease. Since it was producing nothing and was incapable of producing anything on the expiration date of the lease by reason of the failure on the part of appellants to maintain a pumping equipment, the rights of the lessees thereafter to produce from the well terminated on the expiration date.

It has been held in the case of a lease requiring drilling to commence within a specified period that the obligation to commence drilling is wholly independent of any consideration based upon the price of oil, and that the provision that a lessee has the privilege of ceasing production or drilling is not operative until operations actually commence. (*McComber* v.

*Kellerman,* 162 Cal 749, 753 [124 P. 431]; *John* v. *Elberta Oil Co.,* 124 Cal.App. 744, 747 [13 P.2d 538].) By parity of reasoning the termination of the lease by expiration of its term is utterly independent of the right of the lessee to suspend pumping. Such option was operative during the term of the lease and not after its expiration. If a lessee may be required to commence drilling a well when the price of oil will not justify the venture and where the lease provides for a cessation of drilling after the price of oil has declined to an unprofitable price, then surely a lessee under a similar provision should be required to continue production from a well in order to extend his lease, notwithstanding the continued operations might be carried on at a loss to the lessee.

No proof was received herein that the operation of the Wood well in 1941 would have operated at a loss, but, on the contrary, for two years prior to the fire which enforced suspension of production the price of oil had been below 50 cents a barrel and appellants had never suspended pumping by reason thereof. *Stimson* v. *Tarrant,* 132 F.2d 363, is cited by appellants in support of their contention that they should have been permitted to allow the well to stand seven months without pump or derrick because of the unprofitable price of oil. But notwithstanding the laches of lessor Stimson in permitting the defendant to continue operation long after the market for oil had disappeared and for 14 months while the lessee stored the oil and for 11 months after production had been resumed, judgment for the lessee was affirmed on the principle which prevails in Montana that where a well is actually producing until there is an entire absence of a market for its oil such production is deemed to continue during the nonexistence of a market. In the instant case appellants continued operations on the Wood well from the date they acquired it in 1938 to the time of the fire in January, 1941. While they received only 50 cents a barrel they did not cease operations on that account. Presumably they operated at a profit and despite such market they let the well stand idle for seven months without making the slightest effort to resume operations until after Wood had served his notice promptly upon the expiration of the term of the lease, a quite different procedure from the delays of the plaintiff in the cited case.

#### Wood Only Signatory to the Notice.

█ The confusion of appellants with reference to the absence of the signatures of Wood's colessors from the notice is distressing. Had the purpose been to declare a forfeiture for nonperformance of the lessees' obligations of course not only would a cautionary notice have been necessary but also the signatures of all the lessors on writings designed to terminate the lease would have been indispensable. But such was not the nature of the document served. Wood's colessors had no further interest in his land after the termination of the lease. They alone had no power to extend the life of the Wood lease without their joining in such extension as was required by the instrument itself. Inasmuch as the Wood well was producing no oil on August 31, 1941, the term of the lease as to his lot could not have been extended beyond that date without a specific grant in writing by Wood. Instead of such extension Wood took the unnecessary pains to advise appellants that their rights were at an end. The fact that he did so is not conclusive that the notice was ineffective for want of other signatures. The term of the lease having expired without the presence of conditions specified in the lease as prerequisite to an extension thereof, the rights of the lessees ceased on the date named for the expiration of the instrument without the formality of a notice. █ A forfeiture is not involved where an oil lease provides that the premises must be producing oil or gas in paying quantities at the expiration of the term specified. Such a provision is a conditional limitation. █ Production is specified as a condition precedent to an extension, and unless it be established that the well was producing on the expiration date or that a condition excusing such production obtained, the lessee fails to present a valid claim to possessory and exploratory or operative rights. (*Moon* v. *Marker*, 26 Cal.App.2d 33, 36, 41 [78 P.2d 460]; *Caswell* v. *Gardner*, 12 Cal.App.2d 597, 600 [55 P.2d 1222].) █ From this it must be the rule that where the term of a lease expires without a prior fulfillment of the specified condition precedent, the leasehold is at an end and no notice to the lessee is necessary in order to maintain an action in ejectment. It follows that since the Wood lot had been off production and its derrick and pumping equipment in disrepair for seven months prior to August 31, 1941, the rights of appellants in such lot ceased on that day.

## As to Attorneys' Fees.

Three sums comprise the amount of the judgment, namely: $8,000, the amount paid by respondent to appellants; $3,855.15, the sum expended by respondent in erecting upon and removing its equipment from the Wood lot; $1,000 as compensation for attorneys whom respondent "has been compelled to and has employed to protect its interest and to bring and maintain this action." As to the propriety of the first two items appellants make no objection other than their general assignment of error in awarding any judgment in favor of respondent. As to the $1,000 awarded as an item of damage the contention of appellants is justified. There is no basis for the recovery of counsel fees except (1) upon the promise of the defendant to pay the same or (2) by force of a statute. (Code Civ. Proc., § 1021; *Bank of America* v. *Moore,* 18 Cal.App.2d 522 [64 P.2d 460].) Since neither condition obtains here there is no basis for such award. Many attempts have been made in a wide variety of cases to collect counsel fees without an agreement therefor, but without avail. (*Bank of America* v. *Moore, supra; Los Angeles Trust & Savings Bank* v. *Ward,* 197 Cal. 103 [239 P. 847]; *Miller* v. *Kehoe,* 107 Cal. 340 [40 P. 485]; *Hansen* v. *Covell,* 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670]; *City Investment Co.* v. *Pringle,* 49 Cal.App. 353 [193 P. 504].)

It is therefore ordered that the judgment be revised by striking therefrom item 3 awarding $1,000, and as so amended it is affirmed.

McComb, J., and Wilson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 25, 1946.