Filed 8/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BRE DDR BR WHITTWOOD CA LLC, | B272168 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC064482) |
| v. | |
| FARMERS & MERCHANTS BANK OF LONG BEACH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sagahun and Roger T. Ito, Judges. Reversed and remanded, with directions.

Law Offices of Michael Leight, Michael Leight and John Gloger for Defendant and Appellant.

Yocis & Cox, James M. Cox for Plaintiff and Respondent.

When a shopping center tenant defaulted on a secured loan, the lender took possession of the premises through foreclosure and transferred its interest to a third party. Later, the third party surrendered the premises. The landlord filed this action against the lender to enforce the lease obligations, including payment of rent for the full lease term. The trial court granted summary adjudication in favor of the landlord because the foreclosure documents referred to the lease, and the lease required transferees to assume the lease obligations. On appeal, the lender contends that it was obligated to pay rent only while it was in possession of the premises, because it never expressly assumed the lease obligations. We hold that the purchase of the leasehold estate in this case—identified in the deed of trust by reference to the lease—did not constitute an express agreement to assume the obligations of the lease. The record shows the lender did not expressly assume the lease. We reverse the judgment, with directions.

## FACTS

### *The Lease*

On December 13, 2006, the original owner of a shopping center entered into a 15-year lease with the Breckenridge Group (Tenant) for restaurant space. The

2

shopping center was eventually sold to respondent BRE DDR BR Whittwood CA LLC (Landlord).[1]

Section 8.1.1 of the lease required Landlord's consent to any transfer, sale, assignment, or other conveyance. The section provided, "Any attempted or purported Transfer without Landlord's written consent shall, at Landlord's election, be void and shall confer no rights upon any third Person." Section 8.1.1 permitted Tenant to encumber its leasehold interest through a mortgage, but presumed that a mortgage lender who succeeded to Tenant's interest assumed Tenant's obligations: "Tenant shall have the right . . . to encumber Tenant's leasehold interest under this Lease . . . through a Mortgage ('Leasehold Mortgage') with an institutional lender . . . . Landlord agrees that in the event the Leasehold Mortgagee succeeds to Tenant's interest under this Lease (in which event it shall assume all of Tenant's obligations under this Lease), Landlord shall, at the time of such succession, recognize such mortgagee, trustee or lender as the then Tenant under this Lease upon the same terms and conditions contained in this Lease and for the then unexpired portion of the Term." The leasehold mortgagee had the right under the lease to acquire and succeed to the Tenant's interest through a foreclosure sale.

---

[1] The original owner, PPF RTL 15603 Whittwood Lane, LP, sold the property to Cole MT Whittier CA, LP on August 27, 2010, who then sold the property to Landlord on October 17, 2014.

3

Section 8.1.2 of the lease applied to transfers other than leasehold mortgages. These transfers required Tenant to submit a transfer document providing for "the assumption by the Transferee of all of the obligations and liabilities of Tenant" under the lease.

On January 3, 2007, Tenant recorded a memorandum of lease (memorandum) in the Los Angeles County Recorder's Office, signed by the original owner and Tenant. It gave notice of the lease term of 15 years. The memorandum notified successors of the transfer restrictions set forth in the lease: "All of the rights and obligations of the Parties under the Lease shall bind and inure to the benefit of their respective heirs, successors and assigns; provided, however, that nothing [i]n this Section 9 shall be construed to limit or waive the provisions concerning restrictions on Transfer set forth [i]n Article 8 of the lease."

### *Construction Deed of Trust, Foreclosure, and Transfer*

Appellant Farmers & Merchants Bank of Long Beach (Farmers & Merchants) loaned funds to Tenant and recorded a construction deed of trust securing the loan on January 16, 2007. The deed of trust identified the property as "[a]n unrecorded leasehold estate established by a memorandum of lease . . . recorded January 3, 2017." Tenant assigned its right, title, and interest in all present and future leases of the premises to Farmers & Merchants.

4

Tenant defaulted on the loan. On February 12, 2009, Farmers & Merchants recorded a notice of trustee's sale of the property. One month later, Farmers & Merchants recorded a trustee's deed upon sale identifying itself as the successful bidder of the leasehold estate. Both documents described the property in the same language as the construction deed of trust.

On August 5, 2009, Farmers & Merchants recorded a grant deed transferring the property to Whittier Carino's, LLC.[2] Whittier Carino's did not meet the requirements in the lease for an appropriate transfer because it had a net worth of less than $3 million and operated fewer than three restaurants. Based on trademark concerns, Farmers & Merchants recorded another grant deed on November 16, 2009, transferring the leasehold interest to Whittier JC, LLC (Whittier). Whittier's managing member is Farmer's & Merchants.

### Landlord's Notification of Inappropriate Transfer and Surrender of Premises

The shopping center was sold to a second owner in August 2010. On August 10, 2010, the general manager of

---

[2] The property description on the grant deed identifies "[a] leasehold as created by that certain lease dated December 20, 2006, executed by PPF RTL 15603 Whittwood Lane, LP . . . as Lessor, and Breckenridge Group, Inc. . . . as Lessee, as reference in the document entitled 'Memorandum of Lease' . . . ."

the shopping center sent a letter to Farmers & Merchants stating that it was not notified of any transfer, which rendered Farmers & Merchants in default under the lease. Farmers & Merchants replied that its "interest in the subject property continues to be held . . . via an LLC in which [Farmers & Merchants] is the majority member."

The general manager requested that Whittier execute a tenant estoppel certificate. The chief executive officer of Farmers & Merchants executed the certificate on behalf of Whittier. The certificate lists Whittier as the successor in interest of Tenant and states that the lease termination date is March 31, 2023.

The second owner received rent payments from Whittier through July 2014. After the second owner sold the property to Landlord in October 2014, Whittier stopped paying rent and surrendered possession of the premises on December 22, 2014, with the intent to terminate the leasehold estate.

## PROCEDURAL HISTORY

Landlord filed an amended complaint against Farmers & Merchants and Whittier on January 13, 2015, alleging causes of action for breach of contract and damages under Civil Code section 1951.2. Landlord filed a motion for summary adjudication on the issue of whether Farmers & Merchants had a contractual duty as successor to Tenant to comply with the lease. In opposing the motion, defendants

submitted a declaration by the vice president at Farmers & Merchants that defendants neither "intended to, nor did they assume the at issue Lease."

In December 2015, the trial court granted plaintiff's motion for summary adjudication. The court found that the construction deed of trust and notice of sale specifically identified the lease, and the lease provided that Farmers & Merchants was obligated by the lease terms upon foreclosure. Farmers & Merchants elected to purchase the leasehold estate and succeeded to Tenant's rights and obligations. "The language of the underlying documents compels a finding that defendant owes contractual duties under the subject lease."

A bench trial was held on the issue of damages. The vice president of Farmers & Merchants testified that neither defendant executed a document expressly assuming the obligations under the lease. Relying on the summary adjudication ruling, the court found a breach of contract and calculated damages. The trial court entered judgment against Farmers & Merchants in favor of Landlord on March 3, 2016. Farmers & Merchants filed a timely notice of appeal.[3]

---

[3] In the parties' briefs on appeal, they refer to defendant Whittier as an appellant. The trial court did not enter a judgment against Whittier. Only a party aggrieved by the judgment has standing to appeal. (Code Civ. Proc., § 902; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730,

# DISCUSSION

## *Standard of Review*

"Motions for summary adjudication are procedurally identical to motions for summary judgment ([Code Civ. Proc.], § 437c, subd. (f)(2)), and our review of rulings on those motions is de novo (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 464). Summary adjudication is warranted only if the motion completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) The motion shall be granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . .' (*Id.,* subd. (c).)" (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1290.) In reviewing the summary adjudication ruling, we view the evidence presented in the light most favorable to the party opposing

736-737.) Whittier did not file a notice of appeal and has no standing to appeal because it is not an aggrieved party.

8

summary adjudication. (*Seibold v. County of Los Angeles* (2015) 240 Cal.App.4th 674, 682.)

We apply a de novo standard of review to the interpretation of a lease and subsequent documents. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) "'The precise meaning of any contract, including a lease, depends upon the parties' expressed intent, using an objective standard. [Citations.] When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible. [Citation.] [¶] . . . We review the agreement and the extrinsic evidence de novo, even if the evidence is susceptible to multiple interpretations, unless the interpretation depends upon credibility. [Citation.]'" (*Id.* at pp. 1266-1267.)

### General Principles Governing Assumption of a Real Property Lease

"A lease of real property is both a conveyance of an estate in land (a leasehold) and a contract. It gives rise to two sets of rights and obligations—those arising by virtue of the transfer of an estate in land to the tenant (privity of estate), and those existing by virtue of the parties' express agreements in the lease (privity of contract)." (*Vallely Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 822 (*Vallely*).) A leasehold estate for years is a sufficient interest in real property to be security for a deed of trust that confers a power of sale affecting the

9

leasehold after breach of the obligation so secured.  (Civ. Code, § 2920.)  "'[W]here a trust deed to secure a loan is taken . . . , the lessee's interest under such lease is foreclosed by the foreclosure of the deed of trust.' [Citation.]" (*R-Ranch Markets #2, Inc. v. Old Stone Bank* (1993) 16 Cal.App.4th 1323, 1327.)  A mortgagee who takes lawful possession of the premises from the lessee is considered an assignee.  (*Schonfeld v. City of Vallejo* (1975) 50 Cal.App.3d 401, 421, disapproved on other grounds in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725; *Johnson v. Sherman* (1860) 15 Cal. 287, 292-293 ["[h]e is therefore substituted in the place of the mortgagor, who was lessee, and therefore is assignee and liable as such"].)

"An assignee's liability to the landlord turns on the nature of the assignment.  If the assignee takes possession of the premises but no more, privity of estate exists and he is bound by all lease covenants which run with the land.  Upon a subsequent assignment, privity of estate ends and, with it, all obligation to the landlord.  (*Kelly v. Tri-Cities Broadcasting, Inc.* (1983) 147 Cal.App.3d 666, 678 [(*Tri-Cities*)].)  If, however, the assignee expressly agrees with the assignor to assume the obligations of the lease, far different consequences attend.  The assumption agreement creates a new privity of contract between landlord and assignee, enforceable by the landlord as a third party beneficiary, regardless of whether the landlord was a party to the assumption agreement.  As a consequence, the assuming assignee is required to perform all covenants of the lease for

10

the remainder of its term, absent a release by the landlord. (*Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232, 244–245; Rest.2d Property, Landlord and Tenant, § 16.1 (4), com. c, p. 121.)" (*Vallely*, *supra*, 88 Cal.App.3d at p. 822.)

In *Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737 (*Enterprise*), this court found that there must be an express assumption of the contractual obligations of a real property lease to hold an assignee liable for the lease obligations. (*Id.* at p. 746.)[4] Lease covenants that run with the land bind and inure an assignee only as long as it remains in possession of the premises. ""As long as he remains in possession the nonassuming lessee is bound to pay the rent, maintain the insurance, make repairs, and pay taxes, if the lease so provides. However, these obligations terminate when the assignee terminates his possession."" (*Id.*, *supra*, at pp. 745–746, quoting *Tri–Cities*,

_____

[4] The requirements for the assumption of a lease of real property are different than for those of personal property. (Miller & Starr, Cal. Real Estate (4th ed. 2016) § 34:131, pp. 34-427-34-428.) The assumption of a lease of personal property can be shown through words or actions without any formal assumption, and even "implied from the assignee's acceptance of the benefits under the contract or its acquiescence in the terms of the contract. However, the same rules do not apply to the assumption of a *lease of real property*, which requires a formal written assumption. The entry into possession and acceptance of the benefits of the lease will not render the assignee liable on the contract as an assuming party." (*Ibid.*, fn. omitted.)

*supra*, 147 Cal.App.3d at p. 677; accord, *Melchor Investment Co. v. Rolm Systems* (1992) 3 Cal.App.4th 587, 593.)

### Express Agreement

It is undisputed that the deed of trust and sale upon deed created an assignment to Farmers & Merchants. Landlord contends that Farmers & Merchants also assumed the lease obligations for the full term, because the foreclosure and purchase of the deed of trust that referenced the lease constituted an express assumption of the lease terms.  We disagree.

An express assumption of a real property lease requires specific affirmation by the assignee to bind itself to the lease obligations.  In *Bank of America National Trust & Savings Association v. Moore* (1937) 18 Cal.App.2d 522 (*Moore*), the court found the defendant assumed the obligations of a lease by stating so in a written assignment agreement.  The document was signed by the defendant, as assignee, and the assignor.  The document concluded, "'It being understood that said Assignee . . . is to accept, assume and agree to perform all of the terms, conditions and limitations contained in said lease.' [¶]  'The undersigned, [defendant], hereby accepts, assumes and agrees to perform all of the terms, conditions and limitations contained in the aforementioned lease to be kept and performed by said lessee.'"  (*Id.* at p. 524.)  This language established "privity of contract."  (*Id.* at p. 525.)  The court stated, "we have not a

12

naked assignment creating privity of estate only, ceasing with cessation of possession, but one clothed with the express assumption by the assignee of the obligations of the lessee. . . . [T]he agreement of the defendant, in harmony with the requirement of the lease, may be interpreted as a contract directly with the lessor." (*Ibid*.)

In *Realty & Rebuilding Co. v. Rea* (1920) 184 Cal. 565, (*Rea*), the Supreme Court distinguished a "bare assignment" from an "express agreement" to assume obligations in a lease: "An occupant of real property who holds by virtue of a bare assignment of the lease and without entering into any contract, either with his assignor or the lessor, affirmatively binding himself to fulfill the covenants of the lease, is subject only to such obligations as he impliedly assumes by entry and taking possession of the lease premises. [Citations.] . . . Where, however, the assignee expressly agrees in writing to be bound by the terms of the lease, there arises, as distinguished from any obligation resulting from mere occupancy, a new and different obligation . . . based upon privity of contract." (*Id.* at p. 569.)

Similarly, in *First Nat. Bank v. Aldridge* (1939) 33 Cal.App.2d 485 (*Aldridge*), the defendant sought to avoid rent obligations by claiming that no privity of contract existed with the plaintiff, who was an assignee under the initial lease. (*Id.* at pp. 487, 490.) The court disagreed, relying on the defendant's signed agreement to "'assume future obligation of the original lessee and first party . . . in payment of future rentals to the lessor . . . or other party

13

entitled thereto.'" (*Id.* at p. 487.) It noted that "[e]ven in the absence of such an agreement, appellants would have been liable for rent during the period of their occupancy" because the covenant to pay rent ran with the land, "and the naked assignment alone created a privity of estate . . . which placed upon them the obligation to pay rent provided for while they remained in possession of the premises." (*Id.* at p. 490; accord, *Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232, 243 [sublease to defendant contained express promise to assume parent lease]; *Tyler v. Wilson* (1943) 58 Cal.App.2d 583, 587 [partnership did not assume obligations of lease, so monthly payments provided for in lease continued "only so long as" the partnership remained in possession.].)

Under the same legal principles, the Supreme Court has declined to impose obligations on an assignee where the assignee did not sign the lease or any document evidencing an acceptance of the lease or its obligations. In *Treff v. Gulko* (1932) 214 Cal. 591 (*Treff*), the court found that although the assignee consented to an assignment and made payments over time to the landlord, the assignee never signed an "acceptance or agreement to take over the lease." (*Id.* at p. 596.) Finding the defendant "h[eld] under a mere naked assignment of a lease," the court upheld the obligation to pay rent so long as the assignee remained in "occupancy of the premises [which] terminates with his abandonment of possession." (*Id.* at p. 600). The court distinguished cases that found "fresh contractual stipulation" to bind the

14

assignee under the lease. (See *id.* at pp. 594–595, citing *Bonetti v. Treat* (1891) 91 Cal. 223 [assignee agreed in writing "'to pay all rent that may fall, due from time, to time by virtue of the provisions of said lease'"]; *Lopizich v. Salter* (1920) 45 Cal.App. 446 [assignee signed document "'hereby accept[ing] said assignment, and hereby obligat[ing] itself upon said lease'"].) "'In the absence of fresh contractual stipulation, there is no privity of contract between the assignee and the landlord. But the assignee may, by express stipulation to be bound by the covenants of the lease, create a privity of contract between himself and the landlord, which will also endure till the term expires. . . . It seems, however, that to establish privity of contract between landlord and assignee, the necessary agreement must be made between them themselves.'" (*Treff, supra*, at p. 600; accord, *Ellingson v. Walsh, O'Connor & Barneson* (1940) 15 Cal.2d 673 [upon admission of individual defendant as member of lessee partnership, a new legal partnership was formed and required express assumption of the lease to bind the partnership to the lease's contractual obligations].)

The facts in *Tri-Cities* are similar to the case before us. There, a lease between the landowner and lessee required any assignee to assume the lease obligations: "Lessee hereby warrants and represents that in the event said assignment shall ever take place, the assignee therein shall assume all of the liabilities and obligations assumed by Lessee in this Lease Agreement." (*Tri-Cities, supra*, 147 Cal.App.3d at p. 671.) The lease further provided that the

15

"'assigns and/or heirs of both parties shall carry out the terms of this Lease Agreement.'" (*Ibid*.) The defendant purchased the lessee's business, including the lease. (*Id*. at p. 670.) The purchase agreement "acknowledged the [existence] of a land lease covering the real property," and attached an exhibit that states, "'Land Lease covering real property on which broadcasting transmitter is located.'" (*Id*. at p. 671.) The bill of sale also lists the "Land Lease covering real property on which broadcasting transmitter is located." (*Ibid*.) As part of plaintiffs' petition to compel arbitration, it argued that the purchase agreement, lease, and possession of property by Tri-Cities was proof of an assumption of the lease. (*Id*. at p. 672.) The trial court agreed, but the appellate court did not.

The *Tri-Cities* court noted that "[i]n every case examined where there has been an express assumption, the assignee has stated specifically either orally or in writing that he agrees to be bound by the terms of the lease." (*Tri-Cities*, *supra*, 147 Cal.App.3d at p. 673.) After considering the evidence at issue,[5] the court concluded "as a matter of

_____

[5] First, the court noted that the purchase agreement's language ("'[h]owever, the assignability of such lease will be subject to its terms'") "cannot be stretched into an express assumption of all the terms in the lease." (*Tri-Cities*, *supra*, 147 Cal.App.3d at pp. 674–675.) Instead, the court construed this language to reference the uncertainty as to its "*assignability*." (*Id*. at p. 675.) Second, the lease provision stating that "'assignee therein shall assume all of the liabilities and obligations assumed by the Lessee in this

16

law no evidence was presented to the trial court . . . to substantiate the conclusion Tri-Cities had assumed the lease." (*Id.*, at pp. 674–676.)

We adhere to the reasoning set forth in *Tri-Cities* and conclude no express assumption can be found in this case. Farmers & Merchants was not a signatory to the lease. The contract between the original owner and Tenant contemplates engaging a mortgage lender, but the provisions cannot form a binding contract on a non-party to the lease. The foreclosure documents do not contain an express agreement to assume the lease. The deed of trust, notice of trustee's sale, and deed upon sale reference the memorandum of lease, but do not provide any express terms by which Farmers & Merchants agreed to uphold the lease covenants or provisions in the memorandum of lease. We agree with the rationale set forth in *Tri-Cities* that the language of the documents served to acknowledge the lease rather than assume its obligations.

Farmers & Merchants was not a signatory to the tenant estoppel certificate. Whittier executed the tenant estoppel certificate, but no fresh contract was entered into with Whittier, because Landlord refused to consent to

Agreement'" imposed a duty on the "*lessee*, not the assignee." (*Ibid.*) Finally, the lease provision that "'assigns and/or heirs of both parties shall carry out the terms of this Lease Agreement'" constituted an obligation of the lessor and lessee to obtain assumption agreements necessary to perform the terms of the lease—"[i]t create[d] no privity of contract with Tri-Cities." (*Id.* at pp. 675–676.)

17

Whittier as assignee.  The evidence establishes nothing more than a "naked assignment" to Farmers & Merchants. Farmers & Merchants never assumed the lease obligations and was required to pay rent only until it surrendered possession of the premises.  (*Enterprise, supra,* 231 Cal.App.3d at pp. 745-746.)

Landlord could have protected itself by requiring the mortgage lender to sign the lease or a document assuming the lease obligations.  It did not do so.  Landlord, as a signatory to the initial lease, was in the best position to protect itself by including provisions in the lease requiring consent and assumption.  (See *Bennett v. Leatherby* (1992) 3 Cal.App.4th 449, 452 ["lessor[] consented to the sublease and required 'the specific assumption of all of the obligations'"]; *Moore, supra,* 18 Cal.App.2d at p. 525 ["the lease itself declares that an assignment shall be void unless the assignee agrees, in writing, to carry its burdens, the agreement of the defendant, in harmony with the requirement of the lease, may be interpreted as a contract directly with the lessor"].)  In such scenario, the landlord could treat the lease as voidable and seek legal recourse. (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 911 ["the unconsented assignment of a lease can be voided by the lessor's declaration of forfeiture"].)  The lease did not direct Tenant to obtain an assumption from the mortgage lender as it did in the event of a transfer under the lease in Section 8.1.2.

We reverse the judgment and the order granting summary adjudication.  We direct the trial court to deny Landlord's motion for summary adjudication and we remand for further proceedings consistent with this opinion, which may include the filing of a dispositive motion by Farmers & Merchants on the issue of assumption of the lease.  Farmers & Merchants has requested an award of attorney fees on appeal.  The issue of its entitlement to attorney fees and the appropriate amount, if any, is best left to the determination of the trial court.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 320.)

## DISPOSITION

The judgment and the order granting summary adjudication in favor of BRE DDR BR Whittwood CA LLC are reversed.  The trial court is directed to enter a new and different order denying the motion for summary adjudication.  Appellant Farmers & Merchants Bank of Long Beach is awarded its costs on appeal.


KRIEGLER, Acting P.J.

We concur:



BAKER, J.



DUNNING, J.*

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.