Filed 9/22/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GUNTER SEIBOLD, | B253701 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC107640) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge. Reversed with directions.

John F. Krattli, County Counsel and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Appellant.

David M. Shaby II & Associates and David M. Shaby II for Plaintiff and Respondent.

J. Ryan Cogdill for Howard Jarvis Taxpayers Association as Amicus Curiae, upon the request of the Court of Appeal.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, and Diane S. Shaw and Brian D. Wesley, Deputy Attorneys General, for State Board of Equalization as Amicus Curiae, upon the request of the Court of Appeal.

# INTRODUCTION

In this tax refund case we consider what privately held interests affecting publicly owned property constitute taxable possessory interests under Revenue and Taxation Code[1] section 107 and the relevant regulatory rule, Property Tax Rule 20 (Cal. Code Regs., tit. 18, § 20).

Gunter Seibold applied to the Los Angeles County Assessment Appeals Board (Appeals Board) for a refund of property taxes paid to the County of Los Angeles (the County) relating to a ground lease and a hangar at the Santa Monica Municipal Airport. The Appeals Board denied the applications, concluding the County properly assessed Seibold's interests in the subject property as taxable possessory interests. Seibold challenged the decision by filing a tax refund action in the trial court. The court granted Seibold summary adjudication with respect to the hangar, concluding the hangar did not constitute a possessory interest because Seibold owned the hangar and the hangar would not become property of a public entity at the end of the lease term. After a subsequent bench trial, the court likewise ruled in favor of Seibold with respect to the ground lease. Citing certain use restrictions in the ground lease, the court concluded Seibold's interest under the lease was not sufficiently independent of the interests retained by Santa Monica to constitute a taxable possessory interest. The County appealed.

We reverse. With respect to the ground lease, we conclude the lease affords Seibold a private benefit—the exclusive right to store his aircraft and equipment on the leased premises—that is sufficiently independent of the interests retained by Santa Monica to constitute a taxable possessory interest. As for the hangar, section 107, subdivision (b) defines possessory interests to include "Taxable improvements on tax-exempt land." Because the County's evidence raised a triable issue as to whether the hangar fits this definition, we conclude the trial court improperly granted summary adjudication.

---

[1]     Subsequent statutory references are to the Revenue and Taxation Code, unless otherwise designated.

## FACTS AND PROCEDURAL HISTORY

In February 1995, Seibold entered into a month-to-month lease with the City of Santa Monica to utilize certain portions of the Santa Monica Municipal Airport for a hangar to store his aircraft. Pursuant to the lease terms, Seibold was to construct and maintain the hangar at his own cost and expense on the leased premises. As for any other uses, the lease provides, "Lessee is expressly prohibited from conducting heavy maintenance, or engaging in any other use or activity in, on or about the Premises."

Seibold purchased the hangar from a third party vendor. The vendor engineered, manufactured, delivered and installed the hangar on concrete footings prepared by Seibold. The purchase price included building permits and a performance and payment bond.

Under the lease, Seibold's right to sell or otherwise dispose of the hangar is subject to Santa Monica's Hangar Public Access Program (the HPAP). In the event the lease is terminated or Seibold otherwise decides to sell his hangar, the HPAP requires Seibold to sell the hangar to a buyer on a public waiting list at a price set by the HPAP. If no buyer is secured, the HPAP gives Seibold the option of removing the hangar.

In December 2008, the County assessor notified Seibold that the County had imposed escape assessments for tax years 2005 through 2008 based on "a creation, renewal, or assignment of your lease, or the addition or alteration of land and/or improvements occurring on your possessory interest as of December 26, 2005." Adjusted property tax bills for the same tax years each stated that the escape assessments were for "POSS INT DESC AS HANGAR H236 GROUND LEASE WITH S MONICA CITY AIRPORT."

Seibold paid the taxes and filed applications for reduced assessments with the Appeals Board challenging the escape assessments. He also designated the applications as claims for refund. The Appeals Board rejected Seibold's challenges, determining that the ground lease and the hangar each constituted a possessory interest in publicly owned real property under section 107 and Property Tax Rule 20.

In April 2010, Seibold filed a complaint against the County for declaratory relief and a refund of the taxes paid for the hangar and ground lease. Thereafter, Seibold moved for summary judgment on the ground that the County improperly assessed the lease and hangar as possessory interests. He based his motion on the following undisputed facts: (1) the lease limits Seibold's use of the premises to storing his aircraft and does not provide for independent management of the leased premises; (2) Seibold privately owns the hangar; and (3) the hangar will not become property of a public entity upon termination of the lease.

In opposition to the motion, the County argued (1) the escape assessment on the ground lease was properly based on Seibold's possessory interest in publicly owned real property; and (2) the escape assessment on the hangar was properly based on Seibold's ownership of a real property improvement.

The trial court granted summary adjudication with respect to the hangar, but denied the motion with respect to the ground lease. As for the hangar, the court concluded that Seibold had no taxable possessory interest because he owned the hangar and it would not become property of a public entity after the lease expired. With respect to the ground lease, the court concluded that Seibold had failed to show his leasehold interest was not a taxable possessory interest in publicly owned land. The court also denied the motion with respect to Seibold's declaratory relief claim.

On June 12, 2012, the court held a bench trial on Seibold's remaining causes of action. On June 20, 2012, the court filed a Tentative Statement of Decision (1) confirming the court's summary adjudication ruling in favor of Seibold with respect to the hangar; and (2) finding the ground lease constituted a taxable possessory interest. On July 30, 2012, the trial court entered a "Judgment" in favor of Seibold for "refund of property taxes paid attributable to [Seibold's] hangar for assessment years 2005, 2006, 2007 and 2008."

Seibold filed objections to the "Judgment," asserting, among other things, that it did not include a ruling on the taxability of the ground lease and failed to address his count for declaratory relief. On August 10, 2012, he filed a motion to vacate the

4

"Judgment" and enter a new judgment. Consistent with his objections, Seibold argued the "Judgment" was not a final, appealable judgment because it did not address all the issues raised in the litigation. On September 24, 2012, the court filed an order denying Seibold's motion to vacate the "Judgment."

The County timely appealed the "Judgment." Seibold also appealed the "Judgment" and the denial of his motion to vacate. This court determined that the "Judgment" failed to adjudicate Seibold's counts for declaratory relief and a refund of property taxes paid on the ground lease. Accordingly, we concluded the appeals were not taken from a final, appealable judgment and dismissed them as such.[2] (*Seibold v. County of Los Angeles* (Jul. 23, 2013, B243510) [nonpub. opn.]).

On remand, Seibold submitted a proposed judgment expressly adjudicating each count in his favor. He also submitted proposed orders enjoining the collection of possessory interest taxes on the hangar and ground lease and ordering the County to refund all taxes paid on the hangar and ground lease within 30 days.

For its part, the County argued on remand that the trial court should reconsider its determination that the hangar was not taxable. While it acknowledged that Seibold had no taxable possessory interest *in* the hangar, the County argued the hangar was real property and Seibold's ownership of the hangar was properly subject to taxation.

On November 8, 2013, the trial court entered Seibold's proposed judgment as the court's final judgment. Contrary to the court's Statement of Decision, the judgment states that Seibold's interest derived from the ground lease is *not* a taxable possessory interest because his right of possession is not sufficiently autonomous to be considered "independent." The judgment awards Seibold a full refund of all property taxes paid on the hangar and ground lease, prejudgment interest on that amount, declaratory and injunctive relief, attorney fees under section 5152, and postjudgment interest pursuant to Code of Civil Procedure section 685.010. The trial court also entered Seibold's two

---

2    Consistent with our prior opinion, we reject Seibold's contention that entry of the so-called "Judgment" of July 30, 2012 started the jurisdictional clock on the County's instant appeal. The County's notice of appeal from the actual final judgment was timely.

proposed orders enjoining the collection of possessory interest taxes on the hangar and ground lease and ordering the County to refund all possessory interest taxes paid on the hangar and ground lease within 30 days.

After filing a motion for new trial, which the court denied, the County filed a notice of appeal from the November 8, 2013 judgment.

## DISCUSSION

1.   *Taxable Possessory Interests*

"All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation . . . ."  (§ 201; Cal. Const., art. XIII, § 1 ["Unless otherwise provided by this Constitution or the laws of the United States:  [¶] (a) All property is taxable and shall be assessed at the same percentage of fair market value. . . . [¶] (b) All property so assessed shall be taxed in proportion to its full value."].) " 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership."  (§ 103.)  Privately held possessory interests in publicly owned property are subject to taxation.  (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1118, citing Cal. Const., art. XIII, § 1 and Rev. & Tax. Code, § 107.)

"[T]axation of possessory interests is rooted in the belief that 'the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity.' [Citations.]"  (*City of San Jose v. Carlson* (1997) 57 Cal.App.4th 1348, 1352-1353; Cal. Const. art. XIII, § 3, subds. (a) & (b) [property owned by the State or a local government is exempt from taxation].)  As our Supreme Court explained, when a public entity leases its property, "[i]t creates valuable privately-held possessory interests, and there is no reason why the owners of such interests should not pay taxes on them just as lessees of private property do through increased rents.  Their use is not public, but private, and as such should carry its share of the tax burden."  (*Texas Co. v. County of Los Angeles* (1959) 52 Cal.2d 55, 63.)

6

When the underlying facts are undisputed, as they essentially were with respect to the ground lease, the determination of whether a taxable possessory interest exists is a question of law, which we review de novo. (*Vanguard Car Rental USA, Inc. v. County of San Mateo* (2010) 181 Cal.App.4th 1316, 1323-1324.) We likewise review the summary adjudication ruling de novo, viewing the evidence presented in the light most favorable to the County as the party opposing summary adjudication. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843-845)

      2.      *The County Properly Assessed Seibold's Interest in the Ground Lease as a Possessory Interest*

In relevant part, section 107, subdivision (a) defines " 'Possessory interests' " as a "right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property, except when coupled with ownership of the land or improvements in the same person." Section 107, subdivision (a)(1) defines " 'Independent' " to mean "the ability to exercise authority and exert control over the management or operation of the property or improvements, separate and apart from the policies, statutes, ordinances, rules, and regulations of the public owner of the property or improvements. A possession or use is independent if the possession or operation of the property is sufficiently autonomous to constitute more than a mere agency."

In concluding the interest created by the ground lease did not constitute a taxable possessory interest, the trial court found that the restrictions placed on Seibold's use of the leased premises did not allow for sufficiently autonomous possession or operation of the property that was "independent" of the rights retained by the public entity. The court based its finding entirely upon the following provision of the ground lease: "Lessee is expressly prohibited from conducting heavy maintenance, or engaging in any other use or activity in, on or about the Premises." The court's reliance upon the foregoing restriction, without considering the exclusive right granted to Seibold under the ground lease, was contrary to established law.

7

Whether a lessee's right of possession is "independent" within the meaning of section 107, subdivision (a)(1) depends on *both* the degree of the lessee's freedom to use the leased property and the existence and degree of enforceable restrictions on the lessee's use. (*Vanguard*, *supra*, 181 Cal.App.4th at pp. 1327-1329; *Korean Air Lines Co., Ltd. v. County of Los Angeles* (2008) 162 Cal.App.4th 552, 562-563 (*Korean Air Lines*.) A lessee of publicly owned property need not have absolute, unfettered control over the property for his or her use to be "independent." (*Korean Air Lines*, at p. 563; § 107, subd. (a)(1).) Rather, independence requires a degree of autonomy that "constitute[s] more than a mere agency." (§ 107, subd. (a)(1); *Korean Air Lines*, at p. 562.) As the court explained in *Korean Air Lines*, "Civil Code section 2295 defines an agent as 'one who represents another, called the principal, in dealings with third persons.' An agent acts on behalf of the principal and subject to the principal's control." (*Korean Air Lines*, at p. 562.)

A lessee's use of property for a *private benefit* tends to show that the lessee's use is "independent" and not "a mere agency" to achieve governmental purposes. (*Korean Air Lines*, *supra*, 162 Cal.App.4th at pp. 563-564; *Vanguard*, *supra*, 181 Cal.App.4th at pp. 1328-1329.) "The fact that [a lessee] ha[s] 'more than a mere right shared with the general public' " indicates a "measure of control" residing in the lessee that belies the existence of a principal-agent relationship. (*Korean Air Lines*, at p. 565.)

By limiting its analysis to the use restrictions, the trial court failed to adequately consider the private benefit the ground lease conferred upon Seibold. Under the lease, Seibold has the exclusive right to use the leased premises for "the storage of [his] aircraft and aircraft related equipment." Importantly, the use restrictions do not limit the measure of control granted to Seibold with respect to this authorized private use. On the contrary, the restrictions are directed at "any other use or activity" on the premises. Such restrictions, particularly those prohibiting heavy maintenance on the premises, are fully consistent with the governmental entity's "responsibility to safeguard the use of public property." (*Stadium Concessions, Inc. v. City of Los Angeles* (1976) 60 Cal.App.3d 215, 225; *Korean Air Lines*, *supra*, 162 Cal.App.4th at p. 563.) And, while tailored to this

8

responsibility, the subject restrictions in no way required Seibold to act as a governmental agent when he enjoyed the private benefit of storing his aircraft on the leased premises. (See *Korean Air Lines*, at pp. 562-563.) Seibold's right of possession under the ground lease was sufficiently "independent" to establish a taxable possessory interest.[3] The trial court's finding to the contrary was error.

3. *Triable Issues Exists as to Whether the Hangar Was Properly Assessed as a Possessory Interest*

In the preceding section we discussed the definition of " 'Possessory interests' " supplied by section 107, subdivision (a)—that is, the "right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property, *except when coupled with ownership of the land or improvements in the same person*." (Italics added.) Section 107, subdivision (b) alternatively defines the term " 'Possessory interests' " to mean "Taxable improvements on tax-exempt land." Property Tax Rule 20(a) likewise alternatively defines " 'Possessory interests' " as "interests in real property that exist as a result of: [¶] (1) A possession of real property that is independent, durable, and exclusive of rights held by others in the real property, and that provides a private benefit to the possessor, except when coupled with ownership of a fee simple or life estate in the real property in the same person; *or* [¶] . . . [¶] (3) Taxable improvements on tax-exempt land." (Cal. Code Regs., tit. 18, § 20, subd. (a), italics added.) The statute and regulatory rule thus recognize that possessory interests include both the right to possession of publicly owned tax-exempt land, as well as otherwise taxable improvements constructed on the tax-exempt land by the private possessor.

---

[3] As Seibold did not challenge the Appeals Board's finding on any other grounds, and the trial court relied exclusively upon the independence element in ordering a refund of the taxes paid in connection with the ground lease, we do not address section 107, subdivision (a)'s durability and exclusivity elements.

In moving for summary judgment, Seibold argued the hangar did not constitute a taxable possessory interest because he owned the hangar and the hangar would not become property of a public entity at the expiration of his lease with the City of Santa Monica. In its opposition, the County acknowledged that Seibold owned the hangar, but argued the hangar was nevertheless subject to taxation like any other real property improvement under the California Constitution.[4] (See Cal. Const., art. XIII, § 1; see also § 201.) The trial court agreed with Seibold and concluded the County had improperly assessed the hangar as a possessory interest.

Contrary to the trial court's conclusion, the hangar could fit the alternative definition for possessory interests supplied by section 107, subdivision (b) and Property Tax Rule 20(a)(3)—that is, when viewed in the light most favorable to the County, the evidence raised a triable issue as to whether the hangar is a taxable privately owned improvement on tax-exempt public land. However, in granting Seibold summary adjudication, the court reasoned that this definition did not apply because the hangar would "not become the property of a public entity at the end of the term of [Seibold's

---

[4]    Section 105 defines " 'Improvements' " to include, under subdivision (a), "All buildings, structures, fixtures, and fences erected on or affixed to the land." Section 104 defines " 'Real estate' or 'real property' " to include, under subdivision (c), "Improvements."

Viewed in the light most favorable to the County, as the party opposing summary judgment, the evidence raised a triable issue as to whether the hangar is a taxable improvement "erected on or affixed to the land." (§ 105.) The evidence showed Seibold purchased the hangar from a third party vendor; the vendor engineered, manufactured, delivered and installed the hangar on concrete footings prepared by Seibold; the purchase price included building permits and a performance and payment bond; and removing the hangar from the airport would require a demolition permit.

10

lease]."[5] While neither section 107, subdivision (b) nor Property Tax Rule 20(a)(3) impose such a requirement, the court nevertheless derived it from the italicized text in the following passage from the State Board of Equalization Assessors' Handbook:

[5] We should note that the trial court more specifically concluded that the hangar was "*exempt from ta[x]ation* because it is an improvement owned by Plaintiff and does not become the property of a public entity at the end of the term of possession." (Italics added.) This holding was erroneous. Regardless of whether the County properly *assessed* the value of the hangar as a possessory interest, there is no question that Seibold's ownership of the hangar—a real property improvement according to the County's evidence (see fn. 4, *ante*)—is subject to taxation under the California Constitution and Revenue and Taxation Code. (See *Outer Harbor Dock & Wharf Co. v. County of Los Angeles* (1920) 47 Cal.App. 194, 196 ["the rule is thoroughly settled in California that, though the land may be exempt from taxation because it belongs to the city, to the state or to the United States, yet improvements made thereon by an individual for his own use and benefit are subject to assessment and taxation"].) As the County correctly observes in its reply brief, "California does not have a possessory interest *tax*. It has a *property tax* [that] is assessed against both real property owned in fee, and against valuable non-freehold private interests in government-owned property, referred to as 'taxable possessory interests.' " (Italics added.)

Further, insofar as Seibold contends the hangar is not subject to taxation because his right to dispose of it is restricted by the HPAP's terms, we also conclude this contention lacks merit. The HPAP restrictions affect the assessed value of Seibold's possessory interest, not its taxability. In relevant part, Property Tax Rule 21 provides that "the fair market value of a taxable possessory interest is the fair market value of the fee simple absolute interest reduced only . . . by the value of the property rights retained by the public owner." (Cal. Code Regs., tit. 18, § 21, subd. (b)(1).) "Examples of rights in real property that may be . . . retained by the public owner include the following: (i) the right to take possession of the property upon the termination of the taxable possessory interest due to the occurrence of an event such as the expiration of the contract term, a breach of agreement, or the happening of a condition that terminates the possessor's right to possession; [and] (ii) the right to . . . otherwise restrict the possessor's use of the property . . . ." (*Id.*, subd. (b)(2); see also *Fall v. Marysville* (1861) 19 Cal. 391, 392-393.)

11

"[Property Tax Rule 20(a)(3)] then states that a possessory interest includes 'taxable improvements on tax-exempt land.' This refers to privately owned improvements constructed or owned by the possessor (i.e., not the public owner) on the land subject to the taxable possessory interest. According to this provision a possessory interest includes all improvements constructed pursuant to a possessory interest in land *that become the property of the public owner at the termination of the possession*, whether the improvements are constructed at the possessor's or the public owner's expense. However, *improvements owned by the possessor that do not become the property of the public owner at the end of the term of possession fail the ownership test of Rule 20(a)(1) and, thus, are not taxable possessory interests*."

(State Bd. of Equalization, Assessors' Handbook, § 510, Assessment of Taxable Possessory Interests (2002 rev.) p. 6, italics added.)[6]

The interpretation proffered by the Assessors' Handbook, and relied upon by the trial court, is not consistent with the plain language of section 107 or Property Tax Rule 20. As we have noted, nothing in the language of section 107, subdivision (b) or Property Tax Rule 20(a)(3) requires a privately owned taxable improvement occupying space on tax-exempt public land to become property of a public entity for that improvement to constitute a possessory interest. That so-called "ownership test," as the excerpt from the Assessor's Handbook admits, is imposed by the caveat in Property Tax

---

[6]    "The Assessors' Handbook is published by the State Board of Equalization as a guide to county assessors. Although it is not binding on assessors, and some ignore its advice, the work is considered an authoritative expression of office State Board staff opinions and given weight by the courts." (2 Flavin, Taxing Cal. Property (4th ed. 2014) § 32:1, p. 32–2; see, e.g., *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 419-420; *California State Teachers' Retirement System v. County of Los Angeles* (2013) 216 Cal.App.4th 41, 55; *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 735.)

Rule 20*(a)(1)*—"except when coupled with *ownership of a fee simple or life estate* in the real property *in the same person*." (Cal. Code Regs., tit. 18, § 20, subd. (a)(1), italics added.) This caveat conforms to similar language in section 107, *subdivision (a)*— "except when coupled with ownership of the land or improvements in the same person." To import the ownership test into section 107, subdivision (b) and Property Tax Rule 20(a)(3) ignores that these provisions supply an alternative, *independent* definition of the term possessory interests, as expressly signaled by Property Tax Rule 20's use of the disjunctive connector "or." That is, under these legislative and regulatory authorities, " 'Possessory interests' " can be *either* a right to possession of land or improvements that is not coupled with ownership or a life estate in the same entity (§ 107, subd. (a); Cal. Code Regs., tit. 18, § 20, subd. (a)(1)) *or* a taxable privately owned improvement on tax-exempt public land (§ 107, subd. (b); Cal. Code Regs., tit. 18, § 20, subd. (a)(3)). To hold otherwise would make the definition of " 'Possessory interests' " supplied by section 107, subdivision (b) essentially superfluous, in contravention of a fundamental tenet of statutory construction.[7] (See *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1135 ["courts should avoid a construction that makes any word surplusage"].)

The objective of statutory interpretation is to ascertain and effectuate legislative intent, which we determine by looking first to "the language of the statute, giving effect to its 'plain meaning.' " (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 208-209.) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) While section 107, subdivision (a) provides that private non-freehold interests

---

[7] To underscore this point, we note that the possessory interest definition supplied by section 107, subdivision (a) covers the "right to the possession of . . . *improvements* that is independent, durable, and exclusive of rights held by others in the property, except when coupled with ownership of the . . . *improvements* in the same person." (Italics added.) In other words, subdivision (a) already recognizes that a valuable non-freehold interest in a publicly owned improvement can constitute a taxable possessory interest. Thus, subjecting the term "Taxable improvements" in section 107, subdivision (b) to the ownership test would serve only to duplicate what is already stated in subdivision (a), thereby rendering the definition in subdivision (b) superfluous.

in tax-exempt public land or improvements constitute possessory interests, section 107, subdivision (b) recognizes that private ownership of an otherwise taxable improvement constructed on tax-exempt public land also constitutes a possessory interest. Adding a requirement that ownership of the taxable improvement must revert to a public entity at some point, as the Assessor's Handbook posits, limits the definition of possessory interests in a manner the Legislature apparently did not intend. We conclude section 107, subdivision (b) means what it says—the term " 'Possessory interests' means the following: [¶] . . . [¶] (b) Taxable improvements on tax-exempt land." Here, Seibold's privately owned hangar, which, according to the County's evidence (see fn. 4, *ante*), is a taxable improvement constructed on tax-exempt public land, falls squarely within that definition. The trial court erred in granting Seibold summary adjudication on the ground that the County improperly assessed the hangar as a possessory interest.[8]

---

[8] While we acknowledge the County's evidence would be sufficient to meet its initial burden were it to move for summary judgment, we express no opinion as to whether Seibold would be able to raise a triable issue as to whether the hangar actually is an improvement or is otherwise exempt from taxation under the state Constitution or Revenue and Taxation Code.

At oral argument, the County suggested any factual determination concerning the character of the hangar would need to be made by the Appeals Board, as the Appeals Board has exclusive jurisdiction to address factual disputes regarding assessments. While this is true with respect to matters concerning "the value of the property and the fairness of the assessment" (*Norby Lumber Co. v. County of Madera* (1988) 202 Cal.App.3d 1352, 1362 (*Norby*)), this rule does not extend to disputes concerning the legality of the valuation method used by the assessor. (*Ibid.*; *Carlson v. Assessment Appeals Bd. I* (1985) 167 Cal.App.3d 1004, 1009.) Where the dispute concerns the legality of the valuation method, "[t]he court is not restricted to the transcript of the proceedings before the board, but may receive additional evidence bearing on the legal question." (*Norby,* at p. 1363.) Because Seibold's refund action challenges whether the County properly assessed the hangar as a possessory interest—not the value the assessor placed on the hangar—the scope of judicial review is not limited to the evidence presented to the Appeals Board on the question whether the hangar is a taxable improvement.

14

As the court's grant of declaratory and injunctive relief was predicated on its conclusion that the County improperly assessed the lease and hangar as possessory interests, the judgment on those counts is likewise reversed, as is the attorney fee award.

## DISPOSITION

The judgment is reversed and the post-judgment orders are vacated. We conclude Seibold's interest under the ground lease is sufficiently independent to constitute a taxable possessory interest under section 107, subdivision (a). Further, with respect to the hangar, we conclude the County presented sufficient evidence in opposition to Seibold's summary judgment motion to raise a triable issue as to whether the hangar is a taxable improvement on tax-exempt land under section 107, subdivision (b). We therefore direct dismissal in favor of the County with respect to the ground lease claim and remand the hangar claim to the trial court for further proceedings. The County is entitled to its costs.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

We concur:

EDMON, P. J.

ALDRICH, J.

15